## 14639.   GREENE v. MATTHEWS.

1. On the trial of a claim to property levied upon under a common-law execution the plaintiff in fi. fa. may shift the burden of evidence to the claimant by showing that subsequently to the rendition of the judgment and at the time of the levy the defendant was in possession of the property. *Stephens* v. *Southern Cotton Oil Co.*, 147 *Ga.* 410 (1) (94 S. E. 245); Civil Code (1910), § 5170; *Lamkin* v. *Clary*, 103 *Ga.* 631 (1) (30 S. E. 596).

2. Where a judgment was rendered against a defendant in the county of his residence, but the fi. fa. issuing thereon was not entered upon the general execution docket thereof within 10 days from the date of the judgment, one who purchased from the defendant after the judgment but before the record of the fi. fa. on the execution docket, and who claims that by reason of these facts the judgment is not a lien upon the property, must, in order to relieve the property from the lien of the judgment, carry the burden of proving that he acted in good faith and without notice in making the purchase. *Eason* v. *Vandiver*, 108 *Ga.* 109 (1) (33 S. E. 873); *Ray* v. *Atlanta Trust & Banking Co.*, 147 *Ga.* 265 (6) (93 S. E. 418).

3. If a defendant sells his property with the purpose and intent to prevent his creditors from enforcing their claims against it, the sale will be void as to him; and if at the time of the sale the purchaser has reasonable ground to suspect that such is his object, the sale will be void also as to the purchaser. Civil Code (1910), § 3224 (2); *Virginia-Carolina Chemical Co.* v. *Hollis*, 23 *Ga. App.* 634 (3) (99 S. E. 154); *Smith* v. *Wellborn*, 75 *Ga.* 799.

4. The fact that a suit was pending or that a judgment had been rendered against the vendor at the time of the sale is a circumstance which the jury may have a right to consider on the trial of the issue as to whether the sale was made with the intent *on the part of the vendor* to defraud his creditors, as is also the fact of the insolvency or near insolvency of the vendor at the time of the sale. See *Barber* v. *Terrell*, 54 *Ga.* 146; *Tillman* v. *Fontaine*, 98 *Ga.* 672 (5), 677 (27 S. E. 149); *Virginia-Carolina Chemical Co.* v. *Hollis*, 23 *Ga. App.* 634 (4) (99 S. E. 154); *Hollis* v. *Virginia-Carolina Chemical Co.*, 27 *Ga. App.* 103 (1) (107 S. E. 554).

5. The possession of property, real or personal, remaining with the vendor after an absolute conveyance is evidence of fraud. *Peck* v. *Land*, 2 *Ga.* 1 (2); *Fleming* v. *Townsend*, 6 *Ga.* 103 (1); *Smith* v. *McDonald*, 25 *Ga.* 377; *Willingham* v. *Smith*, 48 *Ga.* 580 (3); *Stephens* v. *Southern Cotton Oil Co.*, 147 *Ga.* 410 (2) (94 S. E. 245).

6. "On the trial of a claim case where the issue is the bona fides of the transfer of property by the defendant in execution to the claimant, and there are circumstances which if not satisfactorily explained may be regarded as badges of fraud, it is for the jury and not the judge to pass upon such issues." *Kelley* v. *Stovall*, 138 *Ga.* 186 (75 S. E. 6); *Stephens* v. *Southern Cotton Oil Co.*, supra; *Atwood* v. *Edenfield*, 150 *Ga.* 198 (103 S. E. 170).

7. The evidence in the instant case raised an issue, for determination by the jury, whether the sale was bona fide, or whether the vendor's pur-

pose and intent in making it was to defraud the plaintiff creditor, and, if such fraudulent purpose did exist, whether the claimant had notice thereof or reasonable cause to suspect the same. There were also circumstances sufficient to raise an issue as to whether the claimant had actual notice of the judgment, though the fi. fa. was not recorded in time to give constructive notice. If so, the actual bona fides would have become immaterial. Notice sufficient to excite attention and put a party on inquiry is notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, is equivalent to knowledge, in fixing the rights of parties. Civil Code (1910), § 4530. The court therefore erred in directing a verdict for the claimant. See *Nicol* v. *Crittenden*, 55 *Ga.* 497 (3) ; *Planters & Miners Bank* v. *Willeo Cotton Mills*, 60 *Ga.* 168 (1).

DECIDED NOVEMBER 27, 1923.

Levy and claim; from Fulton superior court—Judge Ellis. April 5, 1923.

On October 7, 1922, a fi. fa. was issued in favor of Mrs. Luella Greene against Charles Marion Greene, for $405 principal, besides costs, founded upon a judgment dated the previous January 17. The fi. fa., on the day of its issuance, was recorded, and was levied upon an automobile, to which W. C. Matthews filed a claim. Upon the trial of the issue thus formed, the court, at the conclusion of the evidence, directed a verdict in favor of the claimant. The plaintiff in fi. fa. excepted. There was evidence authorizing the inference that the property was found in the possession of the defendant at the time of the levy, though this is not shown in the entry.

The testimony of the claimant was as follows: "The automobile levied on in this case is my property. This is the bill of sale Mr. Greene executed to me. This certificate is from secretary of state's office, showing change of license number to me. The application was made on the same date that I bought the car. These checks paid for purchase price of the car. The writing 'on car' was on check at the time it was written. I paid purchase price of $400. About November 1, 1921, I loaned Mr. Greene $50. About the middle of December I let him have $50 more. These loans were in cash. About March he wanted more money. I couldn't see my way clear to let him have it. He owed me $100 and couldn't pay it. I couldn't let him have any more. He said, 'That will force me to dispose of my automobile. How about you buying it?' Said he would sell it to me for $400. I told him I could not give him all the money at that time, 'but can pay for it and can give

you some money now.' He said, 'If you will let me have the car, and if you will buy the car, I will take $50 now, and balance as I need it, or as you can raise it.' So in June I gave him $50 more. He executed to me a bill of sale in March. In June I gave him the other $50. We agreed in March that I would let him use the car on the road, he to take care of it and pay rental for it while using it. He was a traveling salesman. He was to pay for gas and keep it all doped up, and to pay rent at a dollar a day while he was on the road. Saturdays while I was at work he used it to run around town. He used it for nothing. He paid some money down on the rental of the car, and in September, when we made final settlement, he was owing me $50 back rental, and I gave him two checks, one for $65 and one for $85. That was final payment representing $150. I went to the rubber company and paid bill for tires that are on car now. I have not sold car back to Greene. He first borrowed $50; that was around 1st or 15th of November. That was in cash; then $50 around 15th of December. He never paid these sums back. He never gave me a note for it,—just a verbal agreement. I have been knowing Greene about three years. I was living at 391 Peachtree street when I first loaned him money. He was living at the same place. I took no note or due bill. We were friends together. I took no note, just a verbal agreement between us two. He wanted more money in March. I let him have $50. That was when I purchased the car. It was agreed that the other $100 should go on the purchase price of the car; that made $150 I let him have. No agreement was made that when he paid me back I would let him keep the car. I rented him the car, he traveled with it during the week and used it on Saturdays if I didn't want it. Occasionally he used it on Sunday. I let him have more money in June. I let him have $50 in cash in March. I had this bill of sale here for the car. I let him have it the same day in March the bill of sale was written. I don't know who wrote the paper. Mr. Greene came down to the office with the paper. I was not there when it was written. I don't know who he had to write it. He signed it in my presence. I knew he was separated from his wife; didn't know anything about alimony. I didn't know at that time he was paying or supposed to be paying alimony for his wife and children, but I supposed he was. He and I are friends, boarding at same place. He discussed his

domestic affairs very little. I didn't know the first money he borrowed was about the divorce. I knew he had a divorce suit pending. I let him have $50 more in June. He had paid me nothing. I was due him money at that time. Up till June he didn't owe any rent; he had been paying some along. I don't know what he had paid. He would pay me in money. I don't know if he has a checking account. I didn't let him have any more before September. We kept the car at various places, a while on Currier street, a while on Ivy, and a good bit of time in a place the side of the hotel. Greene and I roomed together, started rooming together in January, 1922. The car was in front of the house when levied on. He drove me to the office that morning, then drove it back, and then it was levied on."

The claimant tendered in evidence also the bill of sale to the automobile from Greene to himself, dated March 21, 1922, the two checks for $65 and $85 respectively, dated September 2, 1922, a memorandum of account which Matthews claimed he had paid for repairs, and also a writing from the secretary of State showing a transfer to Matthews of the automobile license. The defendant in fi. fa. was a witness for the claimant and corroborated the claimant's testimony.

*Branch & Howard, James A. Miller,* for plaintiff.

*Louis H. Foster,* for claimant.

BELL, J. (After stating the foregoing facts.) It appears by the evidence that the fi. fa. was based upon a judgment for alimony. It is not disclosed by the record whether there had been a verdict. It may be that the fi. fa. was issued for arrears in the payment of temporary alimony awarded by the judgment. It is not clear whether the alimony was temporary or permanent. At any rate the fi. fa. appears to have been issued upon a mere money judgment, and no question is involved as to whether the property levied upon was affected by any final verdict or judgment in rem. It appears that at the time of the sale the defendant was hard pressed; a judgment had been rendered against him for alimony, and he was having to borrow money. It was inferable that he had but little, if any, other property besides the automobile, of which he remained in possession after the sale. A part of the rents due by him to the claimant for the use of the car was applied as part payment of the purchase price. The defendant and the

claimant had been intimate friends for some time, rooming together. It appears that the claimant "supposed" that the defendant was "supposed" to be paying alimony. Alimony is oftentimes, if not usually, paid under judgment. The claimant knew that the defendant had a wife and children, from whom he was living apart.

Applying to the evidence the principles announced in the headnotes, we think the case was one for submission to a jury.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*